# EXHIBIT 2



# Commercial/Residential ACCOUNT APPLICATION





ABC Supply Co. inc.

## 1. Tell us about your company

### Type of Ownership

☐ Partnership ☐ Corporation ☐ Proprietorship ☐ LLC (attach list of members)

Trade/Business Name ______________________

*"Buyer"*

Address 1 ______________________

*Attach Business Card or Complete*

Address 2 ______________________

*City* *State* *Zip*

Phone ______________ Fax ______________

Cell Phone ______________ Email ______________

State Contractors License # (if applicable) ______________

Have you purchased from ABC before? Where ______________

Estimated Monthly Purchases ______________

**Year Business Started** ______________ **Federal Tax I.D.#** ______________

**If Tax Exempt - Attach Certificate** ☐ **Attached**

**Do You Issue a Purchase Order** ☐ **Yes** ☐ **No**

Person to Contact Regarding Accounts Payable: ______________

at Phone ______________

### Owners and/or Officers Information:

Name ______________ Title ______________

SSN # ______________ Address ______________

City ______________ State ______________ Zip ______________

Date of Birth ______________ County ______________

Driver's License # ______________

Name ______________ Title ______________

SSN # ______________ Address ______________

City ______________ State ______________ Zip ______________

Date of Birth ______________ County ______________

Driver's License # ______________

### Bank Information:

Name of Bank ______________

Address ______________ Phone ______________

### Major Trade References:

Name ______________

Address ______________

Phone ______________ Fax ______________

Name ______________

Address ______________

Phone ______________ Fax ______________

Name ______________

Address ______________

Phone ______________ Fax ______________

### Agreement:

Buyer authorizes all persons, institutions, organizations, companies and credit reporting agencies to furnish all pertinent information, including commercial and consumer credit reports, requested from time to time by ABC. The undersigned and Buyer, if different, each warrant that the information given is true and no unfavorable information has been omitted. The extension of credit hereunder, the amount of credit and the cancellation or reduction of credit shall be within the sole discretion of ABC. Buyer agrees to be bound by ABC's Credit Agreement and Purchase Agreement and acknowledges receipt of same. Each undersigned individual who is either a partner of the Buyer as credit applicant or a sole proprietorship of the Buyer as credit applicant, recognizing that his or her individual credit history may be a factor in the evaluation of the credit history of the buyer, hereby consents for and authorizes ABC to obtain and use consumer credit reports for each undersigned individual, from time to time as may be needed, to evaluate the credit of Buyer.

## 2. Sign here (acknowledges & agrees to be bound by attached terms & conditions)

Signature ______________ Date ______________

Print ______________

## 3. Your personal guaranty

Giving us your personal guaranty will speed the process of approving your application.

### Continuing Guaranty

I (we) the undersigned understand that the information furnished you is for the purpose of obtaining credit from your company, that I am (we are) authorized, in my (our) capacity, to bind my (our) company accordingly. I (we) the undersigned, hereinafter referred to as guarantors, do jointly, severally, and unconditionally guarantee and promise to promptly pay when due any and all indebtedness of Buyer to ABC, together with any late payment charge that may accrue thereon, regardless of how such indebtedness is incurred, whether such indebtedness is direct or indirect, absolute or contingent, due or to become due, or exists now or arises hereafter. In addition, the Guarantor(s) agree to pay all costs of collection, legal expenses and attorney's fees paid or incurred by ABC in the collection of Buyer's indebtedness and in enforcing this Continuing Guaranty. The foregoing indebtedness, principal, interest, costs, expenses and fees are hereinafter called the "Indebtedness." Each undersigned guarantor agrees to be bound by ABC's Terms and Conditions of Continuing Guaranty.

Each undersigned personal guarantor, recognizing that his or her individual credit history may be a necessary factor in the evaluation of this Continuing Guaranty, hereby consents for and authorizes ABC to obtain and use consumer credit reports for each undersigned, from time to time as may be needed to evaluate the credit of Buyer and/or the undersigned.

## 4. Guarantors sign here

Complete Legal Signature ______________

Name ______________

*First* *Middle* *Last*

Home Address ______________

______________

*City* *State* *Zip*

Phone ______________ SSN # ______________

Complete Legal Signature ______________

Name ______________

*First* *Middle* *Last*

Home Address ______________

______________

*City* *State* *Zip*

Phone ______________ SSN # ______________

**Store Use Only**

### ABC SUPPLY CO., INC.

Sales Associate ______________

Sales# ______________ Branch# ______________

# AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC. CREDIT AGREEMENT

As a condition to the election of American Builders & Contractors Supply Co., Inc., a Delaware corporation with its principal place of business at its National Support Center at One ABC Parkway, Beloit, Wisconsin (d/b/a "ABC Supply Co., Inc.," and "Bradco Supply,", among others) (hereinafter, "Seller") to extend credit to Buyer, Buyer has executed Sellers's Credit Application and agrees to the following terms and conditions for all purchases made by Buyer from Seller or any of its subsidiaries. All purchases by Buyer from Seller are made pursuant to this Credit Agreement, the Seller Credit Application, and Seller Purchase Agreement. The terms and conditions of the Seller Credit Application and the Seller Purchase Agreement are incorporated by reference herein. Any payments made through Seller's Internet-based Invoice Gateway (more information at http://www.abcsupply.com/customer-portal) are also subject to the terms and conditions of the Invoice Gateway, which Buyer hereby acknowledges and accepts. The Credit Application, Credit Agreement, the Purchase Agreement and the Invoice Gateway terms and conditions (if applicable) together constitute the entire agreement between Seller and Buyer and will be collectively referred to from time to time as the Agreement. In the event of any conflict in the terms of the aforementioned, the terms of the Seller Purchase Agreement will control.

## A. General Terms and Conditions.

1. Buyer will pay each invoice in full in accordance with the terms of the particular Purchase Agreement, invoice, or other shipping document, with or without Buyer's signature. In the event Buyer fails to make payment when due, Buyer will pay, in addition to the invoice amount, a monthly late payment charge of 1.5%. Seller reserves the right to change such charges from time to time in its sole discretion and without notice. All payments are due within terms. Buyer agrees that should the late payment charge be deemed by a court of competent jurisdiction to violate any law, Buyer's sole remedy against Seller for such violation will be the application of any late payment charge paid in excess of the maximum rate allowable by law toward the unpaid account balance (or a refund of such excess if no account balance remains unpaid).
2. Buyer agrees to pay all costs of collection by Seller of any amounts due hereunder, including actual attorney's fees. Buyer further agrees that, in the event any action arising out of or related to the Agreement between Buyer and Seller, and Seller prevails, Buyer will pay Seller its actual attorney's fees and other costs incurred as a result of or in connection with such action. To the extent state law limits the recoverability of attorney's fees, Seller will be entitled to recover its fees up to the maximum allowed by state law.
3. Seller will have the sole discretion and complete right to apply any payment received from Buyer hereunder in any manner that Seller deems proper. Unless otherwise specified in the remittance advice, Seller may apply payments first to late payment charges, service charges, shipping charges, attorney's fees, or any other applicable charge, in any order, before applying the remainder of any such payments toward Buyer's principal account balance.
4. Buyer represents and warrants that Buyer is not a "consumer" as defined in the Federal Consumer Credit Protection Act, or any other consumer credit laws (Federal, State or Local), and Buyer waives all rights granted to consumers under the Federal Consumer Credit Protection Act, and other Federal, State and Local laws pertaining to "consumer" rights. Buyer further represents and warrants that all purchases made from Seller and any credit extended hereunder will be used solely for business and commercial purposes. Buyer further represents and warrants that any purchases from Seller of "consumer products" as defined in the Magnuson Moss Act or any similar law are being made (i) for resale, (ii) for use in commercial structures, or (iii) for use in the construction of a new residential structure or a substantial addition or re-model to an existing residential structure. Buyer acknowledges and agrees that Seller is a distributor, not a manufacturer, and does not provide warranties on the goods it merely distributes.
5. If this Credit Application and Credit Agreement is executed by a corporation, LLC, partnership or other business entity or company ("Company"), the undersigned individual represents and warrants that the Company has the power to enter into this Agreement, the execution of this Agreement by the undersigned has been duly authorized by the Company and this Agreement is in the best interest of the Company.
6. **Governing Law:** Any action arising out of or related to the Agreement will be brought, at Seller's sole discretion, in a court of law or equity in a county in which the pertinent Seller Branch is situated or, in the county in which the project for which the goods are used or to be used is located, or where an action between Seller and a third party is pending that concerns the subject matter of the agreement. The Agreement will be governed by and construed and enforced in accordance with the procedural and substantive laws of the State where the action is brought. BUYER WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY REGARDING ANY AND ALL DISPUTES ARISING OUT OF THIS AGREEMENT, subject to the law of the jurisdiction where the action is pending. The Agreement contains the full, final and exclusive statement of the Agreement between Seller and Buyer, and no terms and conditions other than those stated herein, and no agreement or understanding in any way purporting to modify the terms and conditions thereof, will be binding on Seller without Seller written consent. Waiver by Seller of any terms or conditions of this contract or waiver of any breach thereof will not be construed as a waiver of any other terms, conditions, or breach. Determination that any provision of the Agreement is illegal or invalid will not affect the validity or enforceability of the remaining provisions of the Agreement.
7. **Buyer agrees to provide Seller with no less than thirty days prior written notice by Certified or Registered Mail of any change in Buyer's name, address, ownership, or form of business entity.**
8. All notifications from Buyer should be addressed to the Seller branch from which Buyer has purchased the most goods in the last 90 days. A copy of all notifications should also be sent to the Executive Director of Customer Financial Services at Seller's National Support Center at One ABC Parkway, Beloit, WI 53511.
9. **Conflicting Provisions and Order of Precedence:** The terms and conditions noted in this Agreement will govern and apply to any and all purchases, whether for materials and/or services made by the Buyer from Seller or any division, affiliate and/or predecessor thereof, at any time whatsoever, whether past, present, or future. In the event the terms and conditions noted herein conflict with terms and conditions of any other existing or future agreement between Seller and Buyer, including, without limitation, any purchase orders or other documents issued by Buyer relating to any material purchases, then in each instance, the terms and conditions of Agreement noted herein shall prevail in all respects, notwithstanding any language in such other agreement or document to the contrary. Buyer hereby acknowledges that this provision is a material inducement to Seller to establish an open account business relationship with Buyer and extending any and all payment terms or credit to the Buyer.
10. **Counterparts:** This Credit Agreement may be executed in counterparts each of which will constitute an original and all of which taken together will constitute a single agreement. Delivery of an electronic image and/or facsimile copy of this executed Agreement or any other document or of an executed counterpart signature page to this Agreement by facsimile, email or other electronic method, or delivery of an email communication from an authorized representative of a party providing such party's acceptance or approval of a document previously transmitted to such party by electronic means, will be binding and considered a delivery of an executed original of such document.
11. **Indemnity: TO THE FULL EXTENT PERMITTED BY LAW, BUYER AGREES TO PROTECT, DEFEND, INDEMNIFY AND HOLD SELLER (INCLUDING ITS AFFILIATED COMPANIES, AGENTS, OFFICERS, AND EMPLOYEES, COLLECTIVELY REFERRED TO AS THE "INDEMNITEE") FREE AND HARMLESS FROM AND AGAINST ANY AND ALL EXPENSES, CLAIMS, DEMANDS, CAUSES OF ACTIONS, SUITS OR OTHER LITIGATION (INCLUDING, WITHOUT LIMITATION, CLAIMS FOR ACTUAL, STATUTORY, PUNITIVE OR EXEMPLARY DAMAGES, AND ALL COSTS THEREOF AND ATTORNEYS' FEES) OF EVERY KIND AND CHARACTER ON ACCOUNT OF PROPERTY DAMAGE, BODILY INJURY, SICKNESS, DEATH OR OTHER LOSS (HEREIN COLLECTIVELY REFERRED TO AS THE "LOSS") IN ANY WAY OCCURRING, INCIDENT TO, ARISING OUT OF OR IN CONNECTION WITH (1) BREACH OF THE WARRANTIES AND REPRESENTATIONS PROVIDED HEREIN; (2) ANY MISREPRESENTATIONS MADE BY BUYER HEREIN; OR (3) ANY BREACH OF OR DEFAULT UNDER THE CREDIT APPLICATION AND AGREEMENT.**

**DEFAULT:** Subject to the limitations of applicable law, Seller may declare Buyer to be in default under this Agreement if Buyer: (a) fails to make any payment when due; (b) violates any part of this Agreement or any other agreement Buyer has with Seller; (c) becomes the subject of bankruptcy, receivership or other insolvency proceedings; (d) exceeds the credit limit on Buyer's account; or (e) Seller reasonably believes itself to be insecure. After Buyer's default, and subject to the limitations of applicable law, Seller has the right, in its sole discretion, to: (i) reduce Buyer's credit limit; (ii) terminate Buyer's account, in which case the terms of this Agreement will apply until full payment owing on Buyer's account is received, including finance charges which will continue to accrue until the date of full payment; (iii) require immediate payment of Buyer's entire account balance, all accrued but unpaid finance charges (if applicable), and all fees and other charges listed in this Agreement; and (iv) bring an action to collect all amounts owed.

## B. Terms and Conditions of Continuing Guaranty.

For value received, and for the purpose of influencing Seller to extend credit or other financial accommodations, or to continue to extend credit or other financial accommodations, to Buyer, each person or entity who signed the Seller's Credit Application as guarantor (hereinafter "Guarantor", whether one or more) hereby guarantees jointly and severally, without limitation as to amount, the prompt payment when due of any and all indebtedness of Buyer to Seller, together with any late payment charge that may accrue thereon, regardless of how such indebtedness is incurred, whether such indebtedness is direct or indirect, absolute or contingent, due or to become due, or exists now or arises hereafter, on the terms and conditions herein (the "Guaranty"). In addition, Guarantor agrees to pay all costs of collection, legal expenses and attorney's fees paid or incurred by Seller in the collection of Buyer's indebtedness and in enforcing this Guaranty. The foregoing indebtedness, principal, interest, costs, expenses and fees are hereinafter called the "Indebtedness".

1. No extension or renewal of time of payment of the Indebtedness, no release or surrender of any security for the Indebtedness of this Guaranty, no release of any person primarily or secondarily liable on the Indebtedness and no delay in enforcement of payment of the Indebtedness under this Guaranty will affect the liability of Guarantor hereunder. Any and all payments upon the Indebtedness made by Buyer, Guarantor, or any other person and the proceeds of any and all collateral or security for any of the Indebtedness may be applied by Seller upon such of the items of the Indebtedness as Seller will determine in its sole discretion.
2. Guarantor waives notice of acceptance of this Guaranty, notice of the extension of creditor financial accommodation to Buyer, notice of the amount of Indebtedness which may exist from time to time, notice of any extension of the time for payment, demand for payment, notice of non payment, protest, notice of protest, and all other notices of every kind and nature, and agrees that this Guaranty may be enforced against the undersigned without any prior or concurrent proceeding or action against Buyer. The obligations of the Guarantor will not be affected by: (a) the failure of Seller to assert any claim or demand or to enforce any right or remedy against the Buyer or another Guarantor; or (b) any extension, modification, or renewal of the terms or amount of the Indebtedness.
3. This Guaranty is a continuing guaranty and will remain in full force and will be binding upon Guarantor and Guarantor's heirs, executors, administrators, and assigns notwithstanding the death of one or more of the undersigned, until after the later of (a) expiration of thirty (30) days after written notice by Certified or Registered Mail of revocation is received by Seller as referenced in Section 12 and (b) all of the Indebtedness owed to Seller by Buyer will have been fully paid (including all late payment charges and attorneys fees which accrue after expiration of the 30 day period).
4. This Guaranty is the joint and several obligation of each person and entity that signs the Guaranty.
5. If this Guaranty is executed by a corporation, LLC, partnership or other business entity or company ("Entity"), the undersigned individual represents and warrants that the Entity has the power to make this Guaranty, the execution by the undersigned of the Guaranty on behalf of the Entity has been duly authorized and this Guaranty is in the best interest of the Entity.
6. Guarantor hereby waives and renounces any and all homestead or exemption rights Guarantor may have under or by virtue of the constitution or laws of the state of Guarantor's domicile, or of any other state or of the United States as against the liability and obligation hereby created. Guarantor transfers and assigns to Seller an amount of any homestead or exemption that may be allowed to Guarantor, including such homestead or exemption as may be set apart in bankruptcy, equal to the amount necessary to pay this obligation in full together with all costs of collection.
7. Guarantor further agrees to the extent that the Buyer makes a payment or payments to Seller or Seller receives any proceeds or collateral, which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to the Buyer, its estate, trustee, receiver, or any other party including without limitation the Guarantor, under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, Buyer's obligations, or the part thereof which has been paid, reduced or satisfied by such amount, will be reinstated and continued in full force and effect as of the date such initial payment, reduction or satisfaction occurred.
8. Guarantor waives all claims for subrogation, reimbursement, exoneration, contribution and indemnification with respect to sums paid or payable to Seller by Guarantor. Guarantor hereby waives any right to enforce any remedy that Seller now has or may hereafter have against the Buyer. Guarantor further agrees that any and all claims of Guarantor against Buyer will be subordinate and subject in right of payment to the prior payment in full of all principal, interest, reasonable costs of collection (including attorneys' fees and expenses), and any other liabilities or obligations owing to Seller by Buyer.
9. Should any one or more provisions of this Guaranty be determined to be illegal or unenforceable by a court of competent jurisdiction, all other provisions will remain effective.
10. All obligations are payable and performable at the address of Seller as identified in Section 12 below, unless Seller provides notice to Buyer or Guarantor of a change of address.
11. Guarantor authorizes all persons, institutions, organizations, companies and credit reporting agencies to furnish any and all information, including commercial and consumer credit reports, regarding Guarantor requested from time to time by Seller.
12. All notifications should be addressed to the Seller branch from which Buyer has purchased the most goods in the last 90 days. A copy of all notifications should also be sent to the Executive Director of Customer Financial Services at Seller's National Support Center at One ABC Parkway, Beloit, WI 53511.

Tear along perforation and maintain for your records

Tear along perforation and maintain for your records

Tear along perforation and maintain for your records

# PURCHASE AGREEMENT TERMS AND CONDITIONS OF SALE AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC.

1. Any purchase made on credit requires that Buyer have on file with American Builders & Contractors Supply Co., Inc. ("Seller") an approved Credit Application. Buyer further confirms Buyer's consent to Seller's Credit Agreement, the terms and conditions of which have been read by Buyer and are incorporated by reference herein. All accounts past due are subject to a monthly late payment charge, not to exceed the maximum allowed by applicable state and federal law.

2. Seller acknowledges and accepts Buyer's order; however, Seller's acknowledgement and acceptance is expressly conditioned upon Buyer's acceptance of the terms and conditions herein. No terms or conditions other than those stated herein, whether contained in Buyer's purchase order, shipping release, or elsewhere, and no written or oral agreement that purports to vary these terms and conditions is binding upon Seller unless set forth in writing, signed by Seller's authorized representative. All negotiations, proposals and representations are merged herein, and this writing constitutes the complete and exclusive statement of the terms and conditions of this Purchase Agreement between Buyer and Seller. Buyer acknowledges that Buyer is not relying on any representation or promise of Seller that is not set forth in this Purchase Agreement. In the event Buyer fails to accept this Purchase Agreement in writing, Buyer's consent to the terms and conditions herein is conclusively presumed, either from Buyer's failure to object within ten days in writing or from Buyer's acceptance or use of the material delivered hereunder. Unless Buyer notifies Seller in writing to the contrary prior to making a purchase, Buyer hereby represents and warrants that any employee or agent action on Buyer's behalf is authorized by Buyer and Seller may rely upon such representation.

3. In any case in which Seller makes delivery, Buyer will pay Seller's customary shipping charges. Delivery will be made at the project site or other place of delivery adjacent to the closest public right of way. Title and risk of loss passes to Buyer upon delivery of the goods. Should Buyer not be present to accept delivery, Buyer authorizes Seller to unload the goods and leave them at the delivery destination. Buyer releases Seller and will indemnify and hold harmless Seller from and against any and all claims demands, actions, causes of action, cost, expenses, and attorneys' fees arising out of or in connection with any and all injury including death, to any person or persons (whether third parties or agents, servants, or employees of Buyer), any and all damages to or loss of any property (whether belonging to Buyer or a third party), and any and all other damages recognized at law or in equity caused in whole or in part by or in any way related to the delivery of goods onto the project site by Seller, whenever such delivery is made in accordance with or pursuant to Buyer's instruction or authorization.

4. Buyer has the right to inspect the goods upon arrival. Buyer's inspection rights expire 24 hours after the arrival of the goods at the delivery destination. A failure to make inspection within that time waives notice of any defect that a reasonable inspection would have revealed. A rejection of the goods by Buyer is not effective unless written notice of rejection is given to Seller within three (3) calendar days of delivery.

5. Without prejudice to any other rights, Seller may suspend further deliveries of any items purchased if Buyer defaults in payment of any amounts due, or whenever Seller may deem itself insecure as to Buyer's performance, until Buyer remedies such default or provides assurance that satisfies Seller in its sole discretion, of Buyer's ability to perform. Seller may cancel any order at any time prior to payment by Buyer.

6. Unless otherwise provided by law, Seller may require Buyer to pay or to reimburse Seller for any tax (except income tax) which now or hereafter is imposed by any taxing authority with respect to the items purchased or the sale, purchase, manufacture, delivery or use thereof.

7. Seller reserves the right to discontinue, without liability hereunder, deliveries of any merchandise, the manufacture, use and/or sale of which in the opinion of Seller would infringe any patent now or hereafter issued, or other intellectual property right under which Seller is not licensed.

8. Where Buyer requires tests or inspection not regularly provided by Seller, Seller may charge Buyer for the actual cost of such test or inspections.

9. Buyer's wrongful nonacceptance of goods, or cancellation or repudiation of an agreement to purchase goods or services entitles Seller to recover, in addition to any incidental damages caused by Buyer's wrongful nonacceptance, cancellation or repudiation, either (i) in the case of goods, the risk of loss of which has passed to Buyer at the time of nonacceptance, cancellation or repudiation, or goods which cannot reasonably be resold by Seller to a third party, or service which have already been performed by Seller, the price of such goods or services; or (ii) in the case of goods for which other buyers exist or services not yet performed, or where an action for the price is not otherwise permitted by law; damages equal to the profit (including reasonable overhead) which Seller would have realized had Buyer fully performed or, at Seller's option, twenty percent (20%) of the contract price as liquidated damages (which constitute a reasonable estimate of Seller's loss and not a penalty), plus, in the case of special orders, Seller's expenses, if any, incurred prior to receipt by Seller of notice of cancellation by Buyer, in connection with providing special services, developing special tooling, purchase special supplies and the like.

10. Seller is not responsible for any delay caused in whole or in part by circumstances beyond Seller's reasonable control, including but not limited to, force majeure, fires or accidents; strikes or other differences with workers; war (whether declared or undeclared), riots or embargoes; delays by carriers; delays in shipment or receipt of materials from suppliers; or any legislative, administrative or executive law, order or requisition of the federal or any state or local government or any subdivision, department, agency, officer or official thereof. Seller is not liable in any event for any damages (whether direct, general, special, incidental, consequential or other) caused by Seller's failure or delay in performance or delivery, if Seller is unable, due to any cause beyond Seller's control, to supply Buyer's total demand for products. Seller may allocate its available supply among Seller's customers, including Seller's branches and affiliates, in any manner Seller deems reasonable.

11. In the case of goods manufactured and sold by Seller with a separate written warranty, that warranty will apply. Otherwise, in the case of goods manufactured and sold by Seller, Seller warrants only that such goods have been manufactured in accordance with Seller's specifications and are free from defects in material and workmanship at the time of sale. For all other goods, upon request, Seller make no warranties, but will assign or transfer to Buyer any assignable or transferable manufacturer's warranties, if any, applicable to the purchase, in lieu of all other warranties, express or implied. EXCEPT AS EXPRESSLY PROVIDED HEREIN, SELLER MAKES NO WARRANTIES, EITHER EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIMS ANY IMPLIED WARRANTIES INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE THERE IS NO WARRANTY THAT EXTENDS BEYOND THE DESCRIPTION ON THE FACE OF THIS PURCHASE AGREEMENT. BUYER ACKNOWLEDGES THAT BUYER'S PURCHASE DECISION IS BASED UPON BUYER'S DUE DILIGENCE AND INSTRUCTION TO SELLER OF THE GOODS REQUIRED BY BUYER AND NOT BY REASON OF IN OR RELIANCE ON ANY STATEMENT MADE BY OR ON BEHALF OF SELLER AS TO THE MERCHANTABILITY, SPECIFIC ATTRIBUTES OR OTHER INFORMATION REGARDING THE GOODS. Buyer acknowledges that lumber and other product dimension descriptions are made consistent with industry standards and do not necessarily represent exact or accurate dimensions. For example, lumber commonly called "2x4" is actually 1.5 inches deep by 3.5 inches wide.

12. Buyer's Remedies/Limitation of Liability: (a) Buyer's sole and exclusive remedy and the limit of Seller's liability for goods or services proven to be other than warranted, whether based upon breach of warranty, negligence, strict liability, tort, breach of contract or any other legal theory, shall be, at Seller's option, (i) replacement of the goods or services, without charge, carriage paid to Buyer's facility; or (ii) refund of the purchase price paid in respect of such goods or services, plus commercially reasonable charges in connection with the return or disposition of goods. To effect this sole and exclusive remedy, Buyer must make any claim (whether sounding in contract or tort) within 12 months of the date of shipment of the goods or performance of the services, and any such claim not made within such 12-month period is irrevocably waived. (b) Seller's sole liability with respect to the goods and services, for any and all loss or damage to Buyer, or any other loss, damage, expense or claim, resulting from any cause whatsoever (whether based on damaged or defective goods, irrespective of whether such damages or defects are discoverable or latent, or Seller's limited warranty shall fail of its essential purpose, or any other reason), and whether based upon breach of warranty, negligence, strict liability, tort, breach of contract or any other theory, will not exceed the aggregate purchase price of the particular goods and services with respect to which losses, damages, expenses or costs are claimed. Seller has no liability to any person other than Buyer by virtue of the sale of the goods, provision or services, or any other matters contemplated by this Agreement and Buyer will add Seller as a party protected by Buyer's warranty and limit of liability provisions in Buyer's terms of sale. The limitation of liability set forth in this paragraph shall survive termination or cancellation of this Agreement. For the avoidance of doubt, Seller is not liable for any damages whatsoever whether direct or indirect resulting from any delay in delivery of the goods or failure to deliver the goods in a reasonable time – whether or not such delay or failure is caused by Seller. (c) THE FOREGOING IS THE ENTIRE OBLIGATION OF SELLER. SELLER IS NOT LIABLE FOR ANY CONSEQUENTIAL, SPECIAL, INCIDENTAL, INDIRECT OR PUNITIVE DAMAGES TO ANY PERSON, WHETHER BASED UPON BREACH OF WARRANTY, NEGLIGENCE, STRICT LIABILITY, TORT, BREACH OF CONTRACT OR ANY OTHER THEORY, REGARDLESS OF WHETHER THE REPLACEMENT OR REFUND REMEDY SET FORTH ABOVE FAILS OF ITS ESSENTIAL PURPOSE OR FOR ANY OTHER REASON WHATSOEVER. Seller shall not be liable for any damages attributable to product abuse, misuse, neglect or any other cause, which is not the fault of Seller.

13. (a) Buyer agrees to indemnify and hold harmless Seller from and against any and all claims, demands, actions, causes of action, costs and expenses arising out of or in connection with, in whole or in part, any act(s) or omission(s), negligent or otherwise, of Buyer, or any of Buyer's agents, servants, employees, subcontractors or customers, including but not limited to: (i) claims of personal injury, including death, to any person or persons (whether third parties or agents, servants or employees of Buyer or Seller); (ii) claims of loss of any property, real or personal (whether belonging to Seller, Buyer or to a third party); and (iii) any and all other damages recognized at law or in equity under any theory whatsoever. (b) This indemnity includes, but is not limited to, any reasonable attorney's fees or other reasonable legal fees incurred by Seller and associated with the foregoing.(c) This indemnity provision is a material term to the Agreement. Buyer's duty to indemnify is a condition to the sale of any goods from Seller to Buyer. Buyer has read the indemnity provision in its entirety, understands each and every part of the provision and acknowledges that there is no ambiguity concerning Buyer's duty to indemnify.(d) In the event that the applicable law prohibits enforcement of this clause as written, then and only then, this clause will be modified to provide the maximum indemnification to Seller, as indemnitee, allowable under that applicable law.

14. Export Sales. Buyer represents and warrants that it has complied and will comply with all applicable laws, rules and regulations pertaining to the export, import and movement of the goods sold hereunder. All drawbacks of duties paid on items used in the manufacture of the goods delivered hereunder will accrue to the Seller, and Buyer agrees to furnish the Seller with all documents and cooperation necessary to obtain payment of such drawbacks.

15. This Agreement shall be governed by and construed according to the laws of the state wherein the Seller branch supplying the goods hereunder is situated. Any action brought upon, or by reason of, this Agreement shall be brought, in Seller's sole discretion, either in a court with jurisdiction over the county in which the Seller branch is located, in a court with jurisdiction over the county in which the project for which the goods are to be used is located, or in a Court or before an arbitration panel where an action between Seller and a third party is pending which concerns the subject matter of this Agreement. Buyer agrees that, in the event any action is brought upon, or due to, this Agreement by either Buyer or Seller, and Seller prevails, Buyer shall pay Seller's reasonable attorney's fees and other costs incurred because of or in connection with such action, in the maximum amount permitted by law.

16. Waiver by Seller of any terms or conditions of this contract or waiver of any breach hereof shall not be construed as a waiver of any other term, condition, or breach. Determination that any provision of this Agreement is illegal or invalid shall not affect the validity or enforceability of the remaining provisions of this Agreement.

17. Returns must be made in accordance with Seller's return policy. A copy of this policy is available upon request.

18. The purchase of goods or services shall not entitle Buyer to use, or otherwise identify Buyer or its business with the name, trademark or other identity of the Seller. Should Buyer violate this provision, Seller reserves all remedies provided for by law or in equity, including, without limitation, injunctive relief. Except with respect to goods manufactured by Seller, Buyer shall indemnify and hold harmless Seller against all loss, damages, costs and expenses awarded against or incurred by Seller in connection with or paid or agreed to be paid, by Seller in settlement of any claim for infringement of any patents, copyright, design, trademark or any other industrial or intellectual property rights of any other person or entity with respect to the goods sold by Seller to Buyer hereunder.

19. T/D symbols printed on the front of any Seller warehouse picking/delivery ticket, invoice, or statement represents the tax and discount status of individual items. The following is a description of each symbol or combination of symbols:

/ = Taxable regardless of the order's tax status
+ = Nontaxable regardless of the order's tax status
— = Non-discountable regardless of the order's terms
+/ = Taxable and no discountable regardless of the order's tax status and terms
\ = Nontaxable and no discountable regardless of the order's tax status and terms

If the item is taxable, and discountable based on the order's tax status and terms, no symbol will print.